ISAAC DE HART, SURVIVOR, &c., PLAINTIFF IN ERROR,
v. WILLIAM S. CREVELING, DEFENDANT IN ERROR.

When the question is whether a surrender of a lease has occurred by opera-
tion of law, the statement of the landlord that he should look to the
substituted tenant for a certain item of rent that would not be due from
him as assignee, is competent evidence, and, if overruled, will consti-
tute error in law.

On error to the Supreme Court.

For the plaintiff in error, *Martin Wyckoff.*

For the defendant in error, *Henry A. Fluck.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The conjuncture of affairs
which has occasioned this controversy, is, in brief, as follows:
On the 12th of April, 1879, Creveling, the defendant in error,
who was plaintiff in the court below, demised to De Hart,
and one Daniel Runkle, who is now deceased, a certain tract
of land in the county of Hunterdon, to be used by them as a
mine of iron ore and minerals. This lease provides that the
lessees, " their executors, administrators or assigns, are to pay
or cause to be paid to the said party of the first part, &c., the
sum of fifty cents per ton of 2,240 pounds weight, merchant-
able iron ore, and fifty cents for all other ores or minerals by
them (the lessees), or those legally representing them, taken
and carried away from said premises for and during the term
of twenty years, &c.; payments to be made at the end of
every three months, &c., for all ore removed during the three
months."

There was a further provision that the lessees, " their ex-
ecutors, administrators and assigns, agree to prosecute their
mining operations with such vigor that the revenues to be
derived therefrom by the said party of the first part (the
plaintiff), his heirs, &c., shall not fall short of the sum of

$500 annually, and in case they shall fail so to do, then that they shall pay that amount on this lease."

This action is founded on this covenant for the payment of rent, Creveling, the lessor, being the plaintiff, and the defendant being De Hart, the surviving lessee.

The only defence interposed at the trial, which it is necessary to notice at the present time, was that the lease sued on had been surrendered by act and operation of law.

To sustain this contention the defendant relied on a train of circumstances, by force of which he insisted that it was to be inferred that his landlord had consented to an abandonment of their relationship touching the premises in question. These evidences, in the main, consisted of the facts that shortly after the execution of the demise in suit, the lessees informed the plaintiff that they were about to transfer the lease to the West End Iron Company, if he was willing, and that thereupon the plaintiff replied that he was perfectly willing, and always thought that they ought to have it; that the company could work it a good deal cheaper than they (the lessees) could, "as they had the steam all there and could supply it;" that at this time the lessees paid to the plaintiff a proportionate part of the rent that had accrued, although the pay day for the same had not been reached; that the lessees on the same occasion turned over gratuitously to their landlord a building they had erected on the demised premises. It was also shown that, for several years after this approved transfer, the plaintiff received the rents stipulated for in the demise from the West End Iron Company, and that when finally that company became remiss in its payments the plaintiff obtained two several judgments against it, and, in the end, had it declared insolvent. It also appeared that during this entire period the plaintiff, although he was in the habit of meeting the defendants, made no claim upon them for the rent in question, nor, indeed, ever alluded to the fact of his long and expensive litigations in his attempt to collect the same.

That the series of circumstances thus arrayed was possessed of a strong evidential bent in favor of the defence set up can-

not be reasonably denied; nor is it easy to see how a verdict could be sustained that was not in accord with it. Certain it is that this proof of an implied surrender was much more cogent than that which was exhibited in many of the reported cases, in which it was judicially held that a mutual abandonment of a demise had been established. The following cases may be taken as illustrations of the views of the courts: *Selby* v. *Browne*, 7 *Q. B.* 620; *Reeve* v. *Bird*, 1 *Cromp., M. & R.* 31 ; 2 *Saund. P. & E.* 179; *Woodcock* v. *Nuth*, 8 *Bing.* 180; *Helsseltine* v. *Seavy*, 16 *Me.* 212; *Nicholls* v. *Atherstone*, 16 *L. J. Q. B.* 371.

This writ of error, however, does not present this point for consideration, the only question being whether there was judicial mistake in the conduct of the cause at the trial. In looking through the proceedings, the conclusion of this court is that there was such error in that course of law. The defendants offered to show that, at the interview between these parties, as above mentioned, there was a large quantity of ore lying on the premises which had been exhumed by the original lessees, and upon which the royalty had not been paid, and, upon the plaintiff's attention being called to this fact, he said that he would get his pay for that ore from the West End Iron Company. The importance of this evidence consisted in its indication that the plaintiff's intention was to make his own terms with the incoming tenant, regardless of the lease, instead of treating it as the assignee of the defendant. Such evidence, it appears to the court, was plainly competent and should have been received, and the consequence is that the act of the court, in its rejection, was a manifest error, illegalizing the trial, and on this account the judgment cannot stand.

Let the judgment be reversed and a *venire de novo* be issued.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, SIMS. 11.